# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ENPAT, INC.,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:11-cv-86-PCF-KRS**

**PAVEL BUDNIC,**

**Defendant.**
_____/

## ORDER

This case comes before the Court on the Motion for Default Judgement and Memorandum of Law and Fact in Support Thereof by Enpat, Inc.  (Doc. No. 16, filed Jan. 7, 2011.)  Enpat Inc. ("Enpat") requests that this Court enter a default judgment against Defendant Pavel Budnic in light of Budnic's failure to appear or respond in any way to the summons and complaint.  (*Id*.)  To date, Budnic has not filed a response in opposition.

### Background

On October 8, 2010, Enpat filed a one count complaint against Budnic alleging that Budnic used and continues to use a wing spar modification kit ("JCM Modification Kit") that infringes one or more claims of United States Patent No. 6,328,260 ("the '260 patent") in violation of 35 U.S.C. § 271(a).  (Doc. No. 1.)  Budnic was duly served with a summons and a copy of the Complaint on November 8, 2010.  (Doc. No. 11, filed Nov. 18, 2010.)  Budnic failed to appear or respond in any way to the summons, and Enpat timely moved for the entry of default pursuant to Federal Rule of Civil Procedure 55(a).  (Doc. No. 12, filed Dec. 7, 2010.)  On December 14, 2010, the Clerk entered a Default against Budnic, and on January 7, 2011, Enpat filed the present Motion for Default

Judgment, including an Affidavit of Military Status. (Doc. Nos. 13, 16.) Budnic has not responded in opposition.

## Standard of Review

The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). However, a default judgment may not be entered by the Court solely on the basis of the clerk's entry of default.[1] Rather, the allegations in the complaint must present a sufficient basis to support the default judgment on the issue of liability. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Eagle Hosp. Physicians, LLC v. SGR Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (reviewing whether the well-pled facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on a complaint that fails to state a claim."). Thus, prior to entering a default judgment, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the

---

[1] Local Rule 1.07(b) sets forth the procedure for obtaining an entry of default and a default judgment where a party who has been served has failed to plead or otherwise defend. It states: "[w]hen service of process has been effected but no appearance or response is made within the time and manner provided by Rule 12, Fed. R. Civ. P., the party effecting service shall promptly apply to the Clerk for entry of default pursuant to Rule 55(a), Fed R. Civ. P, and shall then proceed without delay to apply for a judgment pursuant to Rule 55(b), Fed. R. Civ. P., failing which the case shall be subject to dismissal sixty (60) days after such service without notice and without prejudice; provided, however, such time may be extended by order of the Court on reasonable application with good cause shown." Local Rule 1.07(b).

particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. *United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006).

Once liability is established, the court turns to the issue of relief. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed. R. Civ. P. 55(b)(1)-(2); *Eisler v. Stritzler*, 535 F.2d 148, 153-54 (1st Cir. 1976).

**Analysis**

Enpat requests that this Court enter a default judgment against Budnic, enter a permanent injunction enjoining Budnic from using the JCM Modification Kit, order Budnic to effect the removal of the JCM Modification Kit from all aircraft owned in whole or in part by him, award Enpat compensatory damages for past infringement, award costs pursuant to 35 U.S.C. § 284, and declare the '260 patent infringed. (Doc. No. 16.)

**I. Infringement**

The Complaint alleges that on December 11, 2001, the '260 patent, titled "Wing Spar Modification Kit" was granted to inventors Jack M. Tarbox and Philip Baker, who assigned all right, title and interest in the patent to Revo, Inc., who subsequently assigned all right, title and interest in the patent, including the right to recover for past infringement, to Enpat. (Doc. No. 1 ¶¶ 18-22.) The Complaint further alleges that JCM Aerodesign Limited ("JCM") manufactured or distributed the

-3-

JCM Modification Kit that infringes one or more claims of the '260 patent.  (*Id*. ¶¶ 15, 25.)   Next, the Complaint asserts that Budnic caused a JCM Modification Kit to be installed on an aircraft he owns, and that Budnic uses one or more planes that have the JCM Modification Kits installed.  (*Id*. ¶¶ 23-24.)  The Complaint alleges that Budnic's use of these aircraft is a direct violation of 35 U.S.C. § 271 because Budnic is acting without authorization or license from Enpat or any prior owner of the patent, and that Budnic's infringing activities have caused Enpat injury, which is likely to be irreparable unless infringement is enjoined. (*Id*. ¶¶ 27-31).  Finally, the Complaint asserts that Budnic is willfully infringing the '260 patent.  (*Id*. ¶ 30.)

On December 14, 2010, default was entered against Defendant Budnic.  (Doc. No. 13.)  As discussed previously, the effect of the entry of default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. *Buchanan*, 820 F.2d at 361. Here, the factual allegations in the Complaint relating to Budnic's alleged infringement of the '260 patent,[2] taken as true, are sufficient to establish that Budnic is liable for direct infringement the '260 patent under 35 U.S.C. § 271.[3]  These factual allegations are further supported by: (1) a detailed claim chart provided in the Motion for Default Judgment demonstrating that each limitation of claim 1 of the '260 patent is met by the JCM Modification Kit, (Doc. No. 16 at 6-7); (2) the FAA records attached to the Complaint, (Doc. No. 1-1 at 12-13); and (3) the photograph of the JCM Modification Kit filed in support of the Motion for Default Judgment. (Doc. No. 16-3.)  In view of the allegations

---

[2] The '260 patent is entitled to a presumption of validity pursuant to 35 U.S.C. § 282.

[3] Section 271(a) provides: "[e]xcept as otherwise provided in this title [35 U.S.C. §§ 1 *et seq.*], whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

admitted due to the default and the additional uncontradicted evidence set forth in the record, the

Court finds that Budnic's infringed and continues to infringe the '260 patent in violation of 35 U.S.C.

§ 271.

## II. Compensatory Damages - 35 U.S.C. § 284

With respect to relief sought, Enpat seeks damages pursuant to 35 U.S.C. § 284 in the amount

of $3,450.00 to compensate for Budnic's past infringement of the '260 patent.

A patentee is entitled to "damages adequate to compensate for infringement, but in no event

less than a reasonable royalty for the use of the invention by the infringer, together with interest and

costs as fixed by the court."[4]  35 U.S.C. § 284.  A reasonable royalty is the predominant measure of

damages in patent infringement cases, and "can be calculated from an established royalty, the

infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee

and infringer based upon the factors outline in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.

Supp. 1116, 1120 (S.D.N.Y. 1970)."  *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609

F.3d 1308, 1319 (Fed. Cir. 2010) (internal citations omitted).  The hypothetical negotiation "attempts

to ascertain the royalty upon which the parties would have agreed had they successfully negotiated

an agreement just before infringement began" and "necessarily involves an element of approximation

and uncertainty."  *Lucent*, 580 F.3d at 1324-25.

Here, Enpat offers two licenses previously granted to third parties for the use of the device

claimed in the '260 patent in an effort to establish a reasonable royalty rate for past damages.  The

first license, executed on November 5, 2010, grants Seventh LLC a non-exclusive license to use the

---

[4] The patentee bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580
F.3d 1301, 1324 (Fed. Cir. 2009).

device claimed in the '260 patent on a Lake Amphibian Aircraft for the life of the patent.  (Doc. No. 16-4.)  The second license, executed on December 13, 2010, grants N130CD LLC a similar non-exclusive license to use the device claimed in the '260 patent on a Lake Amphibian Aircraft for the life of the patent.  (Doc. No. 16-5.)

The Federal Circuit has recently discussed the evidentiary value of past licensing agreements for estimating reasonable royalties.  For example, in *Lucent*, the Federal Circuit determined that past lump sum license agreements did not support the jury's damages award because the licenses "arose from divergent circumstances" and "covered different materials."  530 F.3d at 1329.  As a result, the licenses relied on by the patentee in proving damages were not sufficiently comparable to the hypothetical license at issue to sustain the award.  *Id*. at 1329-30.  In *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010), the Federal Circuit overturned a running royalty verdict, finding that comparisons of past licenses to present infringement disputes must account for "the technological and economic differences" between them.  *Id*. at 873; *see also Wordtech Sys.*, 609 F.3d at 1319 (rejecting the use of prior licenses where "[n]either license describe[d] how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee expected to produce").

In the present case, the past license agreements are comparable to the present hypothetical negotiation in that the agreements represent non-exclusive licenses for the use of the device claimed in the '260 patent on a single Lake Amphibian Aircraft.  On the other hand, while the past licenses extend *for the life of the patent*, Enpat asks the Court to use the past licenses to determine a reasonable royalty rate for Budnic's *past infringement*.  In order to reach this figure, Enpat contends that the Court should "prorate" the average license fee by subtracting the percentage of the license fee that

corresponds to the future life of the patent.  However, the evidence currently of record is insufficient

to establish that Enpat's proposed prorating of past license fees is sufficiently comparable to the

hypothetical negotiation at issue to establish a reasonable royalty for Budnic's past infringement.

Accordingly, the Court declines to grant an award of compensatory damages at this juncture.  Instead,

Enpat will be allowed to resubmit supporting documents which enable the Court to determine the

appropriate amount of damages to be awarded under 35 U.S.C. § 284.

## III.  Permanent Injunction - 35 U.S.C. § 283

Enpat additionally seeks a permanent injunction preventing Budnic from using the patented

subject matter and requiring him to remove the JCM Modification Kit from any aircraft he may own

in full or in part.  (Doc. No. 16 at 9.)

The Patent Act expressly provides that injunctions "may" issue "in accordance with principles

of equity" to prevent the violation of any right secured by a patent.  35 U.S.C. § 283.  Traditionally,

patent holders enjoyed a rebuttable presumption that a permanent injunction should be automatically

awarded upon a showing of validity and infringement.  *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S.

388, 391 (2006) (citing cases).  However, in 2006, the Supreme Court rejected this rebuttable

presumption in patent cases, finding instead that "the decision whether to grant or deny injunctive

relief rests within the equitable discretion of the district courts, and such discretion must be exercised

consistent with the traditional principles of equity, in patent disputes no less than in other cases

governed by such standards." *Id.* at 393.  A patentee seeking a permanent injunction must therefore

demonstrate:

> (1) that it has suffered irreparable injury; (2) that remedies available at law, such as
> monetary damages, are inadequate to compensate for that injury; (3) that, considering
> the balance of hardship between the plaintiff and defendant, a remedy in equity is

-7-

warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (internal citations omitted).

In the present case, Enpat contends that is has suffered irreparable injury because the only way Enpat's exclusive right to the patent may be restored is by enjoining others, including Budnic, from using the patented subject matter. However, "in order to obtain injunctive relief, a party can neither rely upon a presumption of irreparable harm nor point to merely possible harm. Instead, whether a patent case or not, it must show that irreparable harm is likely." *Acoustic Processing Tech., Inc. v. KDH Elec. Sys., Inc.*, 697 F. Supp. 2d 146, 157 (D. Me. 2010). Notwithstanding this requirement, the evidence currently of record does not demonstrate that Enpat suffered irreparable harm as a result of Budnic's infringement. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328-29 (Fed. Cir. 2008) (finding irreparable harm after considering previous licenses and distinguishing them from the circumstances of the hypothetical license at issue and determining that "[a]dding a new competitor to the market may create an irreparable harm that the prior licenses did not"); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008); (upholding the district court's denial of a permanent injunction where the patentee failed to show that the defendant's infringement caused the patentee irreparable injury); *Zen Design Group, Ltd. v. Clint*, No. 08-cv-14309, 2009 WL 4050247, at *5 (E.D. Mich Nov. 23, 2009) (entering a default judgment of patent infringement and finding irreparable harm where the infringement has caused, or is likely to cause, irreparable price erosion as well as injury to the patentee's goodwill in the market); *Smith & Nephew, Inc. v. Synthes*, 466 F. Supp. 2d 978, 982 (W.D. Ten. 2006) (finding irreparable harm when a patentee "loses market share or its reputation for innovation").

-8-

Enpat also contends that monetary damages are inadequate because they will not restore Enpat's right to exclude others from using the patented subject matter. However, under *eBay*, a violation of the right to exclude does not compel the conclusion that a patent holder cannot be adequately compensated by remedies at law, such as monetary damages. 547 U.S. at 393. Instead, a patentee must present evidence demonstrating that monetary damages are inadequate. *Id.* Here, the evidence currently of record does not support such a finding. Accordingly, the Court declines to grant a permanent injunction at this juncture. Instead, the Court will allow Enpat to submit further documentation and supporting memorandum to enable the Court to determine whether injunctive relief is appropriate under 35 U.S.C. § 283.

## Conclusion

Based on the foregoing, the Motion for Default Judgement and Memorandum of Law and Fact in Support Thereof by Enpat, Inc. (Doc. No. 16, filed Jan. 7, 2011) is **GRANTED** to the extent it seeks a finding that Defendant Budnic use of the JCM Modification Kit infringed and continues to infringe the '260 patent. Enpat is granted leave to submit within fourteen (14) days from the date of this Order additional documentation and a memorandum of law to enable the Court to determine the appropriate award of compensatory damages and costs under 35 U.S.C. § 284 and to determine whether a permanent injunction is appropriate under 35 U.S.C. § 283 in accordance with the provisions of this Order.

**DONE** and **ORDERED** in Orlando, Florida on February 28, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties