**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ENPAT, INC.,**

                **Plaintiff,**

-vs-                                                    **Case No.  6:11-cv-86-PCF-KRS**

**PAVEL BUDNIC,**

                **Defendant.**

_____

## ORDER

This case comes before the Court on the Motion for Default Judgement and Memorandum of Law and Fact in Support Thereof by Enpat, Inc., (Doc. No. 16, filed Jan. 7, 2011), and the Further Documentation and Proof in Support of Prayer for Injunctive Relief and Compensatory Damages by Enpat, Inc., (Doc. No. 24, filed Mar. 14, 2011).

**Background**

On October 8, 2010, Enpat, Inc. ("Enpat") filed a one count Complaint against Pavel Budnic alleging that Budnic used and continues to use a wing spar modification kit manufactured or distributed by JCM Aerodesign Limited ("JCM Modification Kit") that infringes one or more claims of United States Patent No. 6,328,260 ("the '260 patent") in violation of 35 U.S.C. § 271(a). (Doc. No. 1.)  Budnic was duly served with a summons and a copy of the Complaint on November 8, 2010. (Doc. No. 11, filed Nov. 18, 2010.)  However, Budnic failed to appear or respond in any way to the summons, and Enpat timely moved for the entry of default pursuant to Federal Rule of Civil Procedure 55(a).  (Doc. No. 12, filed Dec. 7, 2010.)

1

On December 14, 2010, the Clerk entered a Default against Budnic, and on January 7, 2011, Enpat filed the present Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). (Doc. Nos. 13, 16.) On February 28, 2011, the Court entered an Order granting the Motion for Default Judgment to the extent it sought a finding that Defendant Budnic's use of the JCM Modification Kit infringed and continues to infringe the '260 patent. (Doc. No. 22.) However, the Court declined to rule on the issues of compensatory damages and injunctive relief, instead granting Enpat leave to file additional documentation and memoranda of law to enable to Court to determine a damages award and the appropriateness of a permanent injunction. (*Id.* at 9.) On March 14, 2011, Enpat filed further documentation in support of its prayer for injunctive relief and compensatory damages in accordance with the Court's Order. (Doc. No. 24.) As of the date of this Order, Budnic has not responded in opposition to the Motion for Default or otherwise appeared in the present case.

**Standard of Review**

The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). However, a default judgment may not be entered by the Court solely on the basis of the clerk's entry of default. Rather, the allegations in the complaint must present a sufficient basis to support the default judgment on the issue of liability. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Eagle Hosp. Physicians, LLC v. SGR Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (reviewing whether the well-pled facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on

a complaint that fails to state a claim."). Thus, prior to entering a default judgment, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. *United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006).

Once liability is established, the court turns to the issue of relief. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed. R. Civ. P. 55(b)(1)-(2); *Eisler v. Stritzler*, 535 F.2d 148, 153-54 (1st Cir. 1976).

**Analysis**

Enpat requests that this Court enter a permanent injunction enjoining Budnic from using the JCM Modification Kit, order Budnic to effect the removal of the JCM Modification Kit from all aircraft owned in whole or in part by him, and award Enpat costs and compensatory damages for past infringement. (Doc. No. 16.) As of the date of this Order, Budnic has not responded in opposition.

**I. Compensatory Damages - 28 U.S.C. § 284**

In its Motion for Default Judgment, Enpat seeks damages pursuant to 35 U.S.C. § 284 in the amount of $3,450.00 for Budnic's past infringement of the '260 patent. Section 284 provides that

a patentee is entitled to "damages adequate to compensate for infringement, but in no event less than a reasonable royalty for the use of the invention by the infringer, together with interest and costs as fixed by the court."[1] 35 U.S.C. § 284.  A reasonable royalty is the predominant measure of damages in patent infringement cases, and "can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based upon the factors outline in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)."[2]  *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,

---

[1] The patentee bears the burden of proving damages.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

[2] The *Georgia-Pacific* factors include the following inquiries:
1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

609 F.3d 1308, 1319 (Fed. Cir. 2010) (internal citations omitted). The hypothetical negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," necessarily "involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009).

In the present case, Enpat offers a variety of evidence relevant to the *Georgia-Pacific* factors in an effort to establish past damages through a hypothetical negotiation. First, Enpat submits evidence demonstrating that Budnic's aircraft would not have been air worthy without either installing a modification kit or conducting the alternative, more expensive method of compliance for airworthiness proposed by the FAA, which would have cost Budnic between $20,000 and

---

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

$40,000. (Doc. No. 24-1 at 1.) Next, Enpat submits evidence that it cost at least $1,000,000 to design, analyze, and obtain FAA approval of the patented modification kit. (*Id.*) In addition, Enpat offers two licenses previously granted to third parties for the use of the device claimed in the '260 patent. The first license, executed on November 5, 2010, grants a non-exclusive license for the use of the device claimed in the '260 patent on a Lake Amphibian Aircraft for the life of the patent with a license fee of $7,000. (Doc. No. 16-4.) The second license, executed on December 13, 2010, similarly grants a non-exclusive license for the use of the device claimed in the '260 patent on a Lake Amphibian Aircraft for the life of the patent with a license fee of $8,000. (Doc. No. 16-5.) The past licenses are therefore comparable to the present hypothetical negotiation to the extent the agreements are non-exclusive lump sum licenses for the use of the device claimed in the '260 patent on a single Lake Amphibian Aircraft. *Cf. Lucent Techs.*, 580 F.3d at 1327-28 (rejecting a patentee's reliance on licenses because "some of the license agreements [were] radically different from the hypothetical agreement under consideration," and the court was "unable to ascertain from the evidence present the subject matter of the agreements"). However, because the past licenses extend for the life of the patent and Enpat is only seeking compensatory damages for past infringement, Enpat proposes that the Court begin with the average license fee and subtract the portion of that fee that reflects future use of the patent, resulting in an award of $3,450 for past infringement. Specifically, Enpat suggests awarding only the portion of the average license fee that corresponds to the percentage of the patent term that expired as of January 7, 2011, the date Enpat filed its Motion for Default Judgment, thereby discounting the fee by the percentage of the patent term that remained valid in the future. (Doc. No. 16.) On January 7, 2011, 46% of the patent term had expired. Thus, the proposed calculation involves multiplying the average license fee of $7,500 by

6

0.46 (46%). (Doc. No. 24 at 12.) After considering the undisputed evidence of record relevant to the *Georgia-Pacific* factors and bearing in mind that a hypothetical negotiation "necessarily involves an element of approximation and uncertainty," *Lucent*, 580 F.3d at 1324-25, the Court finds that an award of $3,450.00 is supported by the evidence and adequate to compensate Enpat for Budnic's past infringement of the '260 patent. Additionally, Enpat will be awarded costs in the amount of $350.00 pursuant to 28 U.S.C. § 284.

## II. Permanent Injunction - 35 U.S.C. § 283

Enpat next seeks a permanent injunction pursuant to 35 U.S.C. § 283 preventing Budnic from using the patented subject matter and requiring him to remove the JCM Modification Kit from any aircraft he may own in full or in part. (Doc. No. 16 at 9.)

The Patent Act expressly provides that injunctions "may" issue "in accordance with principles of equity." 35 U.S.C. § 283. Traditionally, patent holders enjoyed a rebuttable presumption that a permanent injunction should be automatically awarded upon a showing of validity and infringement. *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006). However, in 2006, the Supreme Court rejected this rebuttable presumption, finding instead that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and such discretion must be exercised consistent with the traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 393. Thus, a patentee seeking a permanent injunction must demonstrate:

> (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardship between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (internal citations omitted). Consideration of the four equitable factors as applied to the facts of this case leads the Court to conclude that a permanent injunction is an appropriate remedy for Budnic's infringement.

### A. Irreparable Injury/Adequacy of Remedies Available At Law[3]

The first two factors ask the Court to consider whether Enpat "has suffered an irreparable injury," and whether the remedies available at law, including monetary damages, are adequate to compensate for Enpat's injury. *eBay*, 547 U.S. at 390. Irreparable injury cannot be established solely on the fact of past infringement, and the mere likelihood of future infringement by a defendant does not by itself allow for an inference of irreparable harm. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007). However, "the [c]ourt is not blind to the reality that the nature of the right protected by a patent, the right to exclude, will frequently result in a plaintiff successfully establishing irreparable harm in the wake of establishing validity and infringement." *MerchExchange L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 568 (E.D. Va. 2007). Even when considered under traditional equitable rules, "the existence of a likely infringer in the market may suffice to demonstrate irreparable harm because of the 'difficulty of protecting a right to exclude through monetary remedies.'" *Tiber Labs., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007) (quoting *eBay*, 547 U.S. at 394 (Roberts, J. concurring)). Likewise, while a violation of the right to exclude does not compel the conclusion that a patent holder cannot be adequately compensated by remedies at law, courts have routinely found

---

[3] Courts frequently treat the first two factors, irreparable injury and adequacy of remedies available at law, together, and the Court will do so here. *See, e.g., Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327 (Fed. Cir. 2008); *Sanofi-Synthelabo v. Apotex Inc.*, 492 F. Supp. 2d 353, 397 (S.D.N.Y. 2007).

monetary damages inadequate to remedy injury to the patent holder's right to exclude.[4]  *See, e.g., Smith & Nephew*, 466 F. Supp. 2d 978, 982 (W.D. Tenn. 2006) (finding irreparable harm when a patentee "loses market share or its reputation for innovation"); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) ("Years after infringement has begun, it may be impossible to restore a patentee's exclusive position by an award of damages and a permanent injunction.").

In the present case, the evidence of record demonstrates that the aircraft model the patented modification kit was designed and approved by the FAA to repair has been out of production since at least 2004 and virtually all of the existing aircraft have already been modified by the installation of the either a patented modification kit or the infringing JCM Modification Kit.  Accordingly, Enpat's only option to enforce the '260 patent is to enforce the patent against the existing users. Under these circumstances, if a reasonable royalty were the exclusive remedy, Enpat would effectively lose its right to exclude others from using its patent, resulting in irreparable injury.  *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328-29 (Fed. Cir. 2008) (upholding a permanent injunction where the patentee previously licensed the relevant patents, finding that "[a]dding a new competitor to the market may create an irreparable harm that the prior licenses did not"); *cf. Amado v. Microsoft Corp.*, No. SA CV 09-242 DOC (ANx), 2007 LEXIS 96487, at *39 (C.D. Cal. Mar. 13, 2007) *aff'd in relevant part*, 517 F.3d 1353, 1360-61 (Fed. Cir. 2008) (finding no irreparable injury where the evidence demonstrated that the patentee did not compete with the alleged infringer, did not sell a product covered by the patent, and was no longer even attempting to commercialize or

---

[4] As stated by Chief Justice Roberts in his concurrence to *eBay*, "a page of history is worth volumes of logic" and "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." 547 U.S. at 395 (Roberts, J., concurring).

license the patent). Furthermore, an award of monetary damages would be inadequate here because Budnic's refusal to appear in the proceedings has prevented Enpat from discovering the full extent of damages it could recover from Budnic. This reinforces the inadequacy of a remedy at law and the irreparability of the harm absent an injunction. The first two prongs therefore weigh in favor of granting Enpat's request for a permanent injunction. *See Acumed*, 551 F.3d at 1328 (finding that the "essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." (citing 35 U.S.C. § 154(a)(1))).

### B. Balance of Hardships

The third factor, the balance of the hardships between the plaintiff and the defendant, also weighs in favor of granting a permanent injunction. The evidence currently of record demonstrates that significant time and resources were invested in developing the patented modification kit, prosecuting the '260 patent, obtaining FAA approval for the patented modification kit, and protecting the intellectual property rights related to the patented modification kit. Enpat will be unable to recoup these investments from future purchasers of the patented modification kit because virtually every aircraft the kit is designed and approved to repair has already been modified. On the other hand, Budnic chose to purchase and install the infringing kit. Thus, the hardship to Budnic in being enjoined from continuing to use the infringing product is of Budnic's own creation. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so selected."). Additionally, an injunction would not ground the relevant airplanes because Budnic has the option to proceed with the originally proposed, albeit more expensive repair authorized by the FAA, and there is no evidence of record

demonstrating that this option would be mechanically difficult, financially unreasonable, or otherwise impractical. Thus, the balance of hardships weighs in favor of granting a permanent injunction.

### C. Public Interest

As a general matter, the public maintains an interest in protecting the rights of patent holders, and the "[s]uccessful exploitation" of the patent by the infringer does not allow the infringer to avoid a permanent injunction. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008); *TiVo Inc. v. EchoStar Commc'ns Corp.*, 446 F. Supp. 2d 664, 670 (E.D. Tex. 2006) ("The public has an interest in maintaining a strong patent system."). Accordingly, the public interest factor typically weighs in favor of granting injunctive relief. However, the public interest factor may weigh against granting injunctive relief "where the product at issue is of unusual social benefit." *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1339 (S.D. Cal. 2010) (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560 (D. Del. 2008)). Here, the record does not demonstrate that the public interest would be disserved by an injunction. To the contrary, the public interest would be served by issuing an injunction to protect Enpat's patent rights. Accordingly, the fourth factor weighs heavily in favor of granting injunctive relief.

### D. Conclusion

After considering the traditional equitable factors, the Court concludes that the balance of equities warrants injunctive relief. Enpat has demonstrated that it will suffer irreparable injury in the absence of a permanent injunction, injury that cannot be remedied adequately through the

recovery of monetary damages, and both the balance of the hardships and the impact on the public interest weigh heavily in favor of granting injunctive relief. Accordingly, Enpat's request for a permanent injunction will be granted.

### E. Scope of the Injunction

Pursuant to 35 U.S.C. § 385, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (emphasis added). In accordance with the clear wording of this section, "an injunction is only proper to the extent it prevents 'the violation of any right secured by patent.'" *Eli Lilly & Co. v. Medtronic, Inc.*, 915 F.2d 670, 674 (Fed. Cir. 1990) (quoting 35 U.S.C. § 283). "A necessary predicate for the issuance of a permanent injunction is therefore a determination of infringement," *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1365 (Fed. Cir.1998), and "by the terms of the patent grant, no activity other than the unauthorized making, using, selling, [offering for sale, or importing] of the claimed invention can constitute direct infringement of a patent, no matter how great the adverse impact of that activity on the economic value of a patent." *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 16 (Fed. Cir. 1984) (emphasis in original); *accord* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent thereof, infringes the patent.").

In the present case, Enpat requests that this Court enter a permanent injunction "enjoining Defendant Budnic from use of the infringing wing spar modification kit, [and] order Defendant

Budnic to effect the removal of the infringing wing spar modification kit from all aircraft owned in whole or in part by him." (Doc. No. 16 at 2.) Because Budnic's *use* of the JCM Modification Kit clearly constitutes infringement of the '260 patent under 35 U.S.C. § 271(a), Budnic's use of the kit may be proscribed by a permanent injunction. However, Budnic's mere *possession* of the JCM Modification Kit, including its installation on an aircraft that is not used, does not similarly constitute infringement of the '260 patent and therefore may not be addressed by a permanent injunction. *See Johns Hopkins*, 152 F.3d at 1365 ("Mere possession of a product which becomes covered by a subsequently issued patent does not constitute an infringement of that patent until the product is used, sold, or offered for sale in the United States during the term of the patent. . . . Likewise, neither export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement."). Accordingly, the Court will enter a permanent injunction prohibiting Budnic from using the JCM Modification Kit. However, the Court declines to enter an order directing Budnic to remove the infringing JCM Modification Kits.

### Conclusion

Based on the foregoing, the Motion for Default Judgement and Memorandum of Law and Fact in Support Thereof by Enpat, Inc., (Doc. No. 16, filed Jan. 7, 2011), and the Further Documentation and Proof in Support of Prayer for Injunctive Relief and Compensatory Damages by Enpat, Inc. (Doc. No. 24, filed Mar. 14, 2011) are **GRANTED in part:**

1. Enpat is entitled to an award of damages in the amount of $3,800.00.

2. Budnic is **PERMANENTLY ENJOINED** from further infringing the '260 patent through use of the JCM Modification Kit.

3. The Clerk of the Court is directed to enter judgement in accordance with this Order

and the Order entered at Doc. No. 22 and to thereafter close this file.

**DONE** and **ORDERED** in Orlando, Florida on March 29, 2011.

*/s/ Patricia C. Fawsett*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties